## PETER RUSH v. THE COMMON COUNCIL OF THE CITY OF DETROIT.

### BOARD OF ESTIMATES—RIGHT OF EX-OFFICIO MEMBERS TO PAY FOR THEIR SERVICES.

Relator applied to the Wayne circuit court for *mandamus* to compel the respondent to audit and allow the compensation of relator as a member of the board of estimates of the city of Detroit, and to direct the city controller to draw his warrant on the city treasurer in favor of relator for the amount thereof, as required by the city charter. An order to show cause was granted, a hearing had on petition and answer, and on September 29, 1896, the application was granted, which decision was on December 4, 1896, affirmed on *certiorari*.

*John J. Speed*, for relator, contended:

1. That the only question at issue in this case is as to whether or not the *ex-officio* members of the board of estimates of the city of Detroit are entitled to pay for their services.

2. That by an act approved March 28, 1873 (2 Local Acts of 1873, p. 265), a

board of estimates for the city of Detroit was created; that by the enactment of the charter of 1883, under which the duties of said board were performed by an upper house, known as the board of councilmen, the act of 1873 became obsolete; that by Act No. 488, Local Acts of 1887, the board of councilmen was abolished and the present board of estimates provided for by re-enactment of the terms of the 1873 act with a slight modification as to what officers should be *ex-officio* members and as to compensation of its members, who under the act of 1887 were to receive $3 per day for each daily session of said board; that the following extracts from said act are important to consider in this case:

*a*—Section 2 of chapter 8, which provides for the creation of said board, and that it shall be constituted as follows: "Two members from each ward, who shall be elected at the same time as aldermen, and five members who shall be elected at the same time as the mayor, and who shall hold their office for a term of two years."

*b*—Section 3 of chapter 8, which provides that "all members of said board shall be resident electors of said city, and hold their offices until their successors shall be elected and qualified; that the following officers of said city shall be *ex-officio* members of said board, and shall have the right to participate in its deliberations, but shall not have the right to vote, to wit, the president and chairman of the committee on ways and means of the common council, the city controller," and certain other officials named in the section; that all members of the board shall, before entering upon the discharge of their duties, take and subscribe and file in the office of the city clerk the same oath of office as is prescribed in the charter of said city to be taken by city officers; that the members of said board shall receive as compensation three dollars for each daily session of the board; that said board shall elect one of their members president of said board, who shall preside at its meetings, and who shall hold his office until the next election of members."

That the provision as to *ex-officio* members is inserted in the same section and in connection with the general provision relating to all members of the board; *i. e.* that "all members" shall be resident electors; that "all members" shall before entering upon the discharge of their duties take the prescribed oath of office; that "the members of said board" shall receive as compensation three dollars for

each daily session of the board; that the board shall elect one of "their members" president, etc; that by these general provisions the *ex-officio* members must be resident electors, whatever might be the regulation of the particular act or acts providing for such officers; that all members are required to take the oath of office as members of the board; that the president might be an *ex-officio* member as well as one elected, and there is no exception as to the members who are entitled to compensation; that as all members of the board; give the same time and the same labor and in a measure share the same responsibility why should there be a discrimination as to pay?

*Charles Flowers* and *Charles D. Joslyn*, for respondent.

The facts as established by the answer were:

*a*—That in the years 1890, 1891, and 1892 the relator was controller of the city of Detroit.

*b*—That by the charter of the city of Detroit the city controller may be a member of the board of estimates.

*c*—That relator attended and participated in the deliberations of the board of estimates at their meetings held in the years 1890, 1891, and 1892; ten daily sessions being held in each of the years 1890 and 1891, and nine daily sessions in 1892.

*d*—That relator presented a petition to the respondent asking payment for the sum of $87, which petition was denied.